UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

MATHEW FORD,                                        Civ No: 1:16-cv-6891

                        Plaintiff,

                                                    **COMPLAINT**

        -against-
                                                    Plaintiff Demands A
                                                    Trial By Jury


HCI HUMAN CAPITAL INSTITUTE, INC., and
SHANE LENNON, individually,

                        Defendants.
----------------------------------------------------------------------X


Plaintiff, MATHEW FORD (hereinafter referred to as "FORD" and/or "Plaintiff"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant HCI HUMAN CAPITAL INSTITUTE, INC. (hereinafter referred to as "HCI"), and Defendant SHANE LENNON (hereinafter referred to as "LENNON") upon information and belief, as follows:

### INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, The Fair Labor Standards Act of 1938 ("FLSA"), as amended, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries

Plaintiff has suffered as a result of, *inter alia*, disability discrimination, sex/gender discrimination, together with hostile work environment, retaliation, and wrongful termination by his employer.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, the ADA, and the FLSA. The Court also has jurisdiction pursuant to 42 U.S.C. §12101, *et seq.*, 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted herein.

4. On or about May 27, 2016, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about September 14, 2016, Plaintiff received a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions that give rise to the claims asserted herein occurred within the Eastern District of New York.

## PARTIES

8. Plaintiff is an individual man who is a resident of the State of New York, County of Kings.

9. At all times material, Defendant HCI HUMAN CAPITAL INSTITUTE, INC. is a

foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New York.

10. At all times material, Defendant SHANE LENNON was and is the Executive Director of Sales for Defendant HCI.

11. At all times material, LENNON had supervisory authority over Plaintiff with regard to his employment.

## MATERIAL FACTS

12. At all times material, BRIAN KLEIN (hereinafter referred to as "KLEIN") was and is a Senior Manager of Strategic Relationships for Defendant HCI.

13. At all times material, KLEIN had supervisory authority over Plaintiff with regard to his employment.

14. At all times material, SHANNON BURBELA (hereinafter referred to as "BURBELA") was and is a business manager and the Director of Human Resources for Defendant HCI.

15. At all times material, BURBELA had supervisory authority over Plaintiff with regard to his employment.

16. Plaintiff was born with congenital stenosis of the cervical spine canal, the narrowing of the spinal canal in the neck. This condition, which exists at birth, puts the affected person (Plaintiff) at increased risk of injuring the spinal cord.

17. Plaintiff suffers and continues to suffer from the aforementioned medical condition that qualifies as a disability in accordance with the Americans with Disabilities Act ("ADA").

18. In or around 2008, Plaintiff underwent spinal surgery and had a fusion of his cervical

spine. A metal plate and screw were fused to Plaintiff's spinal column.

19. As a result of the surgery, Plaintiff frequently suffered from pain in his neck, back, and extremities.

20. Defendant HCI hired Plaintiff in or around October 2012, to work in HCI's Member Relationship Center located at 20 Jay Street, Suite 1018 in Brooklyn, New York 11201.

21. Plaintiff began working for Defendant HCI on or about October 1, 2012.

22. Defendant HCI hired Plaintiff as a Manager of Strategic Relationships. Plaintiff's role was primarily in the field of sales.

23. In or around the Summer of 2014, Defendant HCI held an office sponsored event at a baseball game in Cincinnati, Ohio. While at the game, one of Defendant HCI's employees, NEIL (last name unknown) (hereinafter referred to as "NEIL"), became belligerently drunk and began acting violently.

24. In front of several employees, NEIL proceeded to call another employee a, "fag Jew." However, Defendant HCI did not remove him from the event and allowed him to attend a gathering at a local bar after the game.

25. While at the bar, NEIL continued to spew hateful and discriminatory comments without repercussion. Throughout the course of the night, NEIL made several discriminatory comments regarding homosexuals.

26. Plaintiff is homosexual and was deeply disturbed by NEIL's comments.

27. Plaintiff communicated to NEIL that he is homosexual and was extremely hurt by the derogatory comments.

28. NEIL became belligerent with Plaintiff and proceeded to yell at Plaintiff – screaming,

"you're gay!" and then punched Plaintiff in the face (hereinafter referred to as the "Baseball Incident").

29. After returning from the trip, Plaintiff informed Defendant HCI of the Baseball Incident.

30. Defendant HCI instructed Plaintiff not to say anything to anyone else about the Baseball Incident.

31. Shortly thereafter, NEIL was terminated.

32. While cleaning out NEIL's desk, Defendant HCI found a box of bullets in NEIL's desk drawer. This shocking discovery made Plaintiff extremely anxious and fearful for his safety, thinking that NEIL would attempt to retaliate against Plaintiff with violence.

33. Plaintiff discussed these concerns with Defendant HCI, but Defendant HCI took no further action.

34. As a matter of fact, Defendant HCI's employees continued to harass Plaintiff because of his sexual orientation.

35. In or around October 2014, Plaintiff was sitting at his desk when LENNON and KLEIN began discussing going to the gym after work.

36. KLEIN asked if LENNON would prefer going to LENNON's gym in the neighborhood of Chelsea, New York.

37. LENNON responded, "No, there are too many gays there." LENNON looked over at Plaintiff and began to laugh.

38. Defendant LENNON discriminated against Plaintiff on the basis of his sex/gender and sexual orientation.

39. Plaintiff was appalled that a staff member - especially Plaintiff's supervisor – would speak in such a discriminatory and derogatory fashion about homosexuals, especially since LENNON was aware of the Baseball Incident.

40. Plaintiff became unsettled and the work environment turned hostile.

41. In addition to discriminating against Plaintiff on the basis of his sex/gender and sexual orientation, Defendants discriminated against Plaintiff on the basis of his disability.

42. In or around October 2014, Plaintiff approached LENNON and made a request for a reasonable accommodation on the basis of Plaintiff's disability.

43. Plaintiff requested that LENNON permit Plaintiff to work from home in order to better cope with the pain that Plaintiff had been experiencing due to his disability.

44. Plaintiff explained to LENNON that the act of commuting back and forth from the office was aggravating his condition.

45. Plaintiff also added that it would allow him to be more productive, as Plaintiff would not have to spend two (2) hours per day traveling to and from Defendant HCI's office.

46. LENNON refused to accommodate Plaintiff. In fact, LENNON failed to engage in any interactive dialogue with Plaintiff regarding his request for reasonable accommodation.

47. Defendants discriminated against Plaintiff on the basis of his disability and failed to accommodate Plaintiff's request for reasonable accommodation.

48. In or around November 2014, Plaintiff began physical therapy to alleviate the pain he was suffering in his neck. Plaintiff, once again, approached LENNON and requested

to work from home. At this time, LENNON permitted Plaintiff to work from home on Wednesdays, on a limited basis.

49. In or around December 2014, Plaintiff finished physical therapy.

50. During this time, Plaintiff was working four (4) days a week in the office, and one (1) day a week from home. Moreover, during this time, Plaintiff was one of the top performing sales associates for Defendant HCI.

51. On or about January 5, 2015, Plaintiff was walking to work when he was struck by a motor vehicle while crossing through an intersection. Plaintiff was violently thrown five to ten (5-10) feet, and landed on his back and neck.

52. The impact of the collision severely exacerbated Plaintiff's disability. Plaintiff suffered numerous musculoskeletal injuries to his neck, back and extremities. Specifically, as a result of being violently thrown to the pavement, Plaintiff lost nearly forty (40) percent of his ability to function normally and required accommodations in order to continue performing the essential functions of his job.

53. Plaintiff later learned that the impact of the collision caused the metal plate and screw in his neck to crack.

54. On or about January 6, 2015, once again Plaintiff approached LENNON. Plaintiff requested if he could work from home on a more permanent basis, as his doctor informed him that it would take months for him to heal from the injuries suffered from the January 5, 2015 car accident.

55. Plaintiff's doctor instructed Plaintiff that he should do spinal traction daily in order to alleviate the pressure and pain in Plaintiff's spine. Spinal traction is a form of decompression therapy that relieves pressure on the spine and can be performed

manually or mechanically.

56. LENNON denied Plaintiff's request for reasonable accommodation and instead told Plaintiff to use vacation days.

57. Defendants discriminated against Plaintiff on the basis of his disability.

58. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

59. Since Plaintiff was unable to work from home on a regular basis, Plaintiff needed reasonable accommodations within his workplace.

60. As Manager of Strategic Relations, Plaintiff's primary duties and responsibilities required Plaintiff to make frequent phone calls throughout the workday.

61. As previously mentioned, Plaintiff suffers from spinal stenosis, causing pain in his neck and arm. As a result of this condition, Plaintiff frequently felt terrible pain in his neck and arm from holding a telephone to his head all day. Moreover, this pain was severely exacerbated as a result of the accident.

62. Thus, in or around February 2015, Plaintiff requested a reasonable accommodation and asked that Defendant HCI provide him with a telephone headset in order to alleviate the pain and difficulty he was having with his daily calls.

63. Defendant HCI refused to provide Plaintiff with a reasonable accommodation.

64. Defendants discriminated against Plaintiff on the basis of his disability.

65. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

66. In or around March 2015, Plaintiff spoke with Defendant HCI's Director of Human Resources, BURBELA, and again requested a reasonable accommodation.

67. During the course of their conversation, Plaintiff explained to BURBELA the need for Plaintiff to have a headset. Plaintiff informed BURBELA that Defendant HCI refused to provide Plaintiff with a telephone headset, and the serious need for one to alleviate the pain and difficulty with his daily calls as a result of his disability.

68. BURBELA informed Plaintiff that she would look into the matter. However, Plaintiff never heard back from BURBELA.

69. Defendant HCI refused to provide Plaintiff with a reasonable accommodation.

70. Defendants discriminated against Plaintiff on the basis of his disability.

71. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

72. Plaintiff also had numerous medical appointments in connection with his disability.

73. On several occasions in or around the Spring of 2015, Plaintiff requested a reasonable accommodation from Defendant LENNON to take some time off of work to attend these medical appointments.

74. Once again, Defendants refused to provide Plaintiff a reasonable accommodation.

75. Defendants discriminated against Plaintiff on the basis of his disability.

76. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

77. As Plaintiff was not being accommodated at work, once again Plaintiff begged LENNON to allow him to work from home. Plaintiff was still suffering the effects of the accident and needed serious medical attention to help him heal properly. The environment upon which Defendants forced Plaintiff to work was rigid, and disrupted Plaintiff's healing process.

78. Still, Defendants refused said request.

79. Defendants discriminated against Plaintiff on the basis of his disability.

80. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

81. In fact, Defendants permitted several employees to work from home – employees that were not even suffering from a disability.

82. However, Defendants did not allow Plaintiff to work from home, because of his disability.

83. In fact, Defendants allowed Plaintiff's co-workers, CHRIS MCDONALD and ANDREW YALE, to work full-time from home.

84. Furthermore, Defendants granted reasonable accommodation to JOSEPH SINGER, a similarly situated employee of Defendant HCI, who was allowed to work from home three (3) days a week because of his childcare situation.

85. In or around April 2015, Plaintiff spoke with LENNON and requested short-term disability leave.

86. LENNON instructed Plaintiff that despite his need for short-term disability leave, Plaintiff was to continue working from home.

87. Plaintiff informed LENNON that Plaintiff needed time to recover and needed to engage in extensive physical therapy.

88. However, LENNON still demanded that Plaintiff work four (4) hours per day.

89. Moreover, Plaintiff's direct supervisor, KLEIN, also instructed Plaintiff that he would need to keep his sales numbers up, maintain productivity, and client contact.

90. At this time, Defendants failed to inform Plaintiff of his rights and eligibility to take

Family and Medical Leave ("FMLA").

91. Upon information and belief, Plaintiff was eligible to take medical leave in accordance with the FMLA.

92. As a result, Plaintiff was essentially just working from home full-time, but only receiving payment for four (4) hours of work.

93. After several weeks, Plaintiff began to receive payment for all of the hours worked prospectively.

94. In or around May 2015, Plaintiff worked well from home and was very productive.

95. However, as Plaintiff was working so much, unfortunately Plaintiff was not able to make much progress in his attempt at recovery.

96. Plaintiff continued to work from home up to the end of July 2015 and continued to be very productive.

97. At this time, Plaintiff informed LENNON that his disability had not improved much. However, Plaintiff established that he was able to work full-time from home and still be very successful.

98. In or around the end of July 2015, LENNON informed Plaintiff that Plaintiff would only be allowed to work from home for three (3) days a week. As already discussed, despite Plaintiff's disability and request for reasonable accommodation, Defendants allowed similarly-situated coworkers to work remotely full-time from their home.

99. Defendants discriminated against Plaintiff on the basis of his disability.

100. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

101. Plaintiff continued to split his days working three (3) days a week from home, and

two (2) days a week at the office.

102. In or around the end of July 2015, Plaintiff returned to the office and noticed that all of his coworkers had been given headsets by Defendant HCI. As mentioned above, in or around February 2015, Defendant HCI denied Plaintiff's request for a headset as a reasonable accommodation for his disability.

103. Defendants blatantly discriminated against Plaintiff on the basis of his disability.

104. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

105. In or around August 2015, Defendant HCI changed their policy regarding the rules of engagement for obtaining sales leads and calls.

106. As a result, many of Plaintiff's clients were more susceptible to being poached by other members of Defendant HCI's sales team.

107. Furthermore, LENNON had the discretionary power to distribute sales leads and calls.

108. LENNON discriminated against Plaintiff and retaliated against Plaintiff by intentionally assigning Plaintiff undesirable sales leads and calls.

109. In or around September 2015, LENNON reprimanded Plaintiff for missing too many "clicks" or sales leads. As a result, LENNON docked Plaintiff's pay. However, Plaintiff ran several reports and determined that numerous other employees were missing significantly more "clicks" than Plaintiff, but were not reprimanded or docked pay.

110. Defendants retaliated against Plaintiff on the basis of his request for a reasonable accommodation.

111. On or about Friday October 2, 2015, Plaintiff sent an email to LENNON, KLEIN, and BURBELA, that he would be out of the office because of an important doctor's appointment with a neurosurgeon regarding his disability.

112. At the same time, Plaintiff spoke with Defendant HCI that he was meeting with the neurosurgeon to discuss the possibility of a surgery that would require removing the bottom portion of Plaintiff's spinal cord and replacing it with metal rods.

113. Plaintiff informed Defendants that if Plaintiff decided to undergo the procedure it would be a lengthy recovery process and would require the neurosurgeon to remove several disks in Plaintiff's neck, as well as open a portion of Plaintiff's spinal column.

114. After learning of the possibility of this procedure, Defendant HCI terminated Plaintiff the following day that Plaintiff was in the office, on or about Tuesday October 6, 2015.

115. Defendants discriminated against Plaintiff of the basis of his disability.

116. Defendants retaliated against Plaintiff on the basis of his disability.

117. Defendants subjected Plaintiff to an adverse employment action on the basis of his disability.

118. In fact, Plaintiff did not need the surgery and was able to continue working for Defendant HCI.

119. Defendant HCI terminated Plaintiff for poor performance; however, this was merely pretextual as Plaintiff was a top performer.

120. Defendant HCI retaliated against Plaintiff on the basis of his disability and because Plaintiff was considering taking additional medical leave for surgery.

121. In fact, at the time Defendant HCI terminated Plaintiff for poor performance, Plaintiff was one of the top performers during the 2015 calendar year.

122. Defendant HCI's reason for terminating Plaintiff was clearly pretextual.

123. As a result of Defendants' actions, Plaintiff felt extremely degraded, victimized, and emotionally distressed.

124. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continue to suffer severe emotional distress and physical ailments.

125. As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

126. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

127. Plaintiff seeks reinstatement to his position with Defendant HCI.

128. The above are just some of the examples of the pattern and practice of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**

129. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

130. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of

1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

131. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

132. Defendants violated the section cited herein by failing to Plaintiff's requests for reasonable accommodations, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability.

133. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the ADA.

134. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER
THE AMERICANS WITH DISABILITIES ACT**

135. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

136. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter.

137. Defendants engaged in unlawful employment practices prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

138. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION
UNDER TITLE VII OF THE CIVIL RIGHTS ACT**

1. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

2. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

   "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

3. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to sex/gender discrimination and causing a hostile work environment.

4. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

5. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER TITLE VII OF THE CIVIL RIGHTS ACT

6. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

7. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

8. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.*, by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

9. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR VIOLATIONS OF THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.

139. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

140.§2612 of the Family Medical Leave Act states in pertinent part:

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

141.Defendants violated Plaintiff's FMLA rights by failing to provide him with appropriate leave thereunder.

10. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the FMLA.

11. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION AND INTERFERENCE UNDER THE**
**FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.**

142.Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

143. § 2615 of the FMLA states as follows:

Prohibited acts

(a) Interference with rights

(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made    unlawful by this subchapter.

144. Defendant unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise his rights under the above section.

12. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW**

145. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

146. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

147. Defendants violated the section cited herein by discharging, creating and maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his disability and sex/gender.

148. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

13. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW

149. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

150. New York State Executive Law § 296 (7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article".

14. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

15. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW

151. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

152. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

153. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

16. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

154. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

155. The Administrative Code of City of NY § 8-107 [1] provides that:

"It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

156. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's sex/gender and disability.

157. Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of New York City Administrative Code Title 8.

158. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

159. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

160. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

161. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating and retaliating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

162. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A TWLEVTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

163. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

164. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

165. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

166. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRTEENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

167. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

168. The New York City Administrative Code Title 8, § 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

169. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTEENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

170. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

171. The New York City Administrative Code Title 8, § 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based

upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

172. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and reinstatement to his position, and for such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs request a jury trial on all issues to be tried.

Dated:   December 13, 2016
         New York, New York

                                        DEREK SMITH LAW GROUP, PLLC
                                        *Attorneys for Plaintiff*

                              By:       _____
                                        Zack Holzberg, Esq.
                                        30 Broad Street, 35th Floor
                                        New York, New York 10004
                                        (212) 587-0760